# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD BRAUNSTEIN,<br><br>    Plaintiff,<br><br> v.<br><br>FRONT YARD RESIDENTIAL CORPORATION, ROCHELLE R. DOBBS, LELAND ABRAMS, GEORGE G. ELLISON, MICHAEL A. ERUZIONE, LESLIE FOX, WADE J. HENDERSON, LAZAR NIKOLIC, and GEORGE WHITFIELD MCDOWELL,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Edward Braunstein ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Front Yard Residential Corporation ("Front Yard" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Front Yard and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Front Yard and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to affiliates of Amherst Residential, LLC ("Amherst") (the "Proposed Transaction").

2. On February 18, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with affiliates of Amherst, pursuant to the which the Company's shareholders will receive $12.50 in cash for each share of the Company's common stock owned (the "Merger Consideration"). The Company has scheduled a special meeting of shareholders to vote on the Proposed Transaction for April 27, 2020, at 8:30 a.m., Eastern Time.

3. On March 23, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Front Yard and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Front Yard shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company's stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a common shareholder of Front Yard.

9. Defendant Front Yard is a company incorporated under the laws of Maryland with its principle executive offices located at 5100 Tamarind Reef, Christiansted, United States Virgin Islands 00820. The Company's common stock trades on the NYSE under the symbol "RESI."

10. Rochelle R. Dobbs ("Dobbs") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11. Defendant Leland Abrams ("Abrams") is and has been a director of Font Yard at all times during the relevant time period.

12. Defendant George G. Ellison ("Ellison") is and has been a director of Font Yard and the Company's Chief Executive Officer at all times during the relevant time period.

13. Defendant Michael A. Eruzione ("Eruzione") is and has been a director of Font Yard at all times during the relevant time period.

14. Defendant Leslie Fox ("Fox") is and has been a director of Font Yard at all times during the relevant time period.

15. Defendant Wade J. Henderson ("Henderson") is and has been a director of Font Yard at all times during the relevant time period.

16. Defendant Lazar Nikolic ("Nikolic") is and has been a director of Font Yard at all times during the relevant time period.

17. Defendant George Whitfield McDowell ("McDowell") is and has been a director of Font Yard at all times during the relevant time period.

18. Defendants Dobbs, Abrams, Ellison, Eruzione, Fox, Henderson, Nikolic, and McDowell are collectively referred to herein at the Individual Defendants.

19. The Individual Defendants, along with Defendant Front Yard, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Front Yard is a real estate investment trust ("REIT") focusing on acquisition and management of single-family rental properties throughout the United States. As of August 9, 2018, the Company had approximately 15,000 homes.

**The Company Announces the Proposed Transaction**

21. On February 18, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

AUSTIN, Texas and CHRISTIANSTED, U.S. Virgin Islands, Feb. 18, 2020 (GLOBE NEWSWIRE) -- Amherst Residential, LLC ("Amherst Residential"), a privately-owned, vertically-integrated real estate firm, and Front Yard Residential Corporation ("Front Yard" or the "Company") (NYSE: RESI), two industry leading providers of high-quality and affordable rental homes, announced today that the companies have entered into a definitive merger agreement, whereby Amherst Residential will acquire Front Yard in a transaction valued at approximately $2.3 billion, including debt to be assumed or refinanced.

Under the terms of the agreement, Front Yard shareholders will receive $12.50 in cash per share. The per share purchase price represents a premium of approximately 14.2% over the per share closing price of Front Yard's common stock on May 20, 2019, the day prior to the public announcement of Front Yard's decision to initiate a formal process to explore strategic alternatives.

"This transaction meaningfully advances our effort to improve the experience of residents and investors in single-family rental properties," said Sean Dobson, Chief Executive Officer and Chairman of the Board, Amherst Holdings, LLC. "With our expanded scale, additional team members in local markets and the collective experience of both teams, we believe this combination provides a powerful platform that is well positioned to serve the broad constituency focused on affordable, safe, attractive housing."

"We are excited to join forces with Amherst in a transaction that we believe is in the best interests of our shareholders, employees and residents," said George Ellison, Front Yard's Chief Executive Officer. "The transaction will deliver the certainty of immediate cash to our shareholders at a premium, and I am confident our platform and residents will benefit from being part of a larger, vertically-integrated organization. We look forward to completing this transaction and ensuring a seamless transition."

"This strategic acquisition grows our ability to optimize the ownership and utilization of U.S. single-family real estate. By combining with Front Yard, our increased scale will allow us to further enhance the services we provide to both individual consumers as well as our investment partners," said Drew Flahive, President of Amherst Residential. "We know the Front Yard team well and are pleased to welcome them as we continue to execute our differentiated single-family real estate strategies."

"After a thorough strategic review process, we have decided to enter into this agreement with Amherst, which we believe maximizes value for our shareholders," said Rochelle R. Dobbs, Front Yard's Chairwoman of the Board of Directors. "Amherst is a leader in the industry and a natural, strategic fit with Front Yard."

Amherst Residential is a subsidiary of Amherst Holdings, a data-driven real estate investment firm with strategies across the residential and commercial real estate capital markets. The firm delivers a full suite of products and services to both individual and institutional owners of single-family real estate. This transaction will expand Amherst Residential's nationwide SFR portfolio to more than 36,000 homes. At closing, Amherst Residential affiliates and subsidiaries will acquire Front Yard's operating platform and assets, including approximately 15,000 SFR homes, currently managed by Front Yard's operator, HavenBrook Homes. Beginning at closing, HavenBrook Homes' operations will be integrated with Main Street Renewal LLC, Amherst Residential's in-house operating company and the collective organization will retain the Main Street Renewal brand.

**Approvals and Timing**

The transaction is expected to close in the second quarter of 2020, subject to the approval of the holders of a majority of Front Yard's outstanding shares and the satisfaction of customary closing conditions.

The Front Yard Board of Directors has unanimously approved the merger agreement and intends to recommend that Front Yard shareholders vote in favor of it at a Special Meeting of Stockholders, to be scheduled as soon as practicable. As part of the transaction, shareholders representing approximately 18% of Front Yard's voting stock have agreed to vote in favor of the transaction.

**Advisors**
Goldman Sachs & Co. LLC and Credit Suisse Securities (USA) LLC are serving as financial advisors to Amherst Residential and Gibson, Dunn & Crutcher LLP is serving as Amherst Residential's legal counsel.

Deutsche Bank Securities Inc. is serving as financial advisor to Front Yard and Weil, Gotshal & Manges LLP is serving as Front Yard's legal counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

22. On March 23, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Management's Financial Projections

24. The Proxy Statement contains projections prepared the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27. Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Rental Net Operating Income, (ii) Core Funds From Operations, and (iii) Adjusted Funds From Operations.

28. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Deutsche Bank's Financial Opinion

29. The Proxy Statement contains the financial analyses and opinion of Deutsche Bank Securities Inc. ("Deutsche Bank") concerning the Proposed Transaction, but fails to provide material information concerning such.

30. With respect to Deutsche Bank's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate the free cash flows estimated to be generated by Front Yard for the years 2020 to 2023; (ii) the inputs and assumptions underlying Deutsche Bank's selection of the range of discount rates ranging from 7.0% to 8.5%; (iii) the

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

range of terminal values for the Company; and (iv) the basis for Deutsche Bank's application of a perpetual growth rate range between 2.5% and 3.0%.

31. With respect to Deutsche Bank's *Analysis of Selected Publicly Traded Companies*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed by Deutsche Bank in its analysis.

32. With respect to Deutsche Bank's *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose the individual items for each transaction observed by Deutsche Bank in its analysis.

33. With respect to Deutsche Bank's *Transaction Premia Analysis*, the Proxy Statement fails to disclose the transactions used in the analysis as well as the premiums paid in each of the transactions observed.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Front Yard within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Front Yard, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 24, 2020                                              Respectfully submitted,


By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*